**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON**

**CIVIL ACTION NO. 19-278-DLB**

**GARY BROCK**                                                                                 **PLAINTIFF**

**v.**                            **MEMORANDUM OPINION AND ORDER**

**ANDREW SAUL, Commissioner
of the Social Security Administration**                                       **DEFENDANT**

\* \*   \* \*   \* \*   \* \*   \* \*   \* \*   \* \*   \* \*

This matter is before the Court on the parties' cross motions for summary judgment. (Docs. # 19 & 11). The Court, having reviewed the administrative record and the parties' motions, and for the reasons set forth herein, affirms the Commissioner's decision. Therefore, the Commissioner's motion will be granted and the Plaintiff's motion denied.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

On June 22, 2017, Plaintiff Gary Brock filed an application for Disability Insurance Benefits under Title II and Part A of Title XVIII, Supplemental Security Income under Title XVI, and Medical Assistance under Title XIX of the Social Security Act, alleging disability as of March 1, 2012. (Tr. 236-237, 243).[1] Plaintiff later amended his alleged disability onset date to June 14, 2017. (Tr. 62). At the onset of the disability that allegedly rendered

---

[1] While Plaintiff's application mentions both Title XVIII and Title XIX, neither of these titles is mentioned in the initial denial, reconsideration, or ALJ decision from the Social Security Administration. Further, neither counsel for Plaintiff nor the Commissioner discusses Title XVIII or Title XIX in their briefs before the Court. Therefore, the Court will proceed as if the Plaintiff appeals only the denial of benefits under Title II and Title XVI.

1

Plaintiff unable to work, he was fifty-three years old.  (Tr. 236).  Plaintiff's application under Title II and Title XVI was denied initially on October 23, 2017, (Tr. 102-103, 115-116), and was denied upon reconsideration on February 23, 2018, (Tr. 131, 147).  At Plaintiff's request, (Tr. 191-192), an administrative hearing was conducted, (Tr. 59-90), and on July 1, 2019, Administrative Law Judge ("ALJ") Jonathan H. Leiner found that Plaintiff was not disabled under the Social Security Act and, therefore, not entitled to benefits.  (Tr. 15-26).  The decision became the final decision of the Commissioner on September 24, 2019 when the Appeals Council denied Plaintiff's request for review.  (Tr. 1-6).

## II.   DISCUSSION

### A.   Standard of Review

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards.  *See Colvin v. Barnhart*, 475 F.3d 727, 729-30 (6th Cir. 2007) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)).  "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)).  Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations.  *Id.* (citing *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).  Rather, the Court must affirm the Commissioner's decision as long as it is supported by substantial evidence, even if the Court might have decided the case differently.  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388,

389-90 (6th Cir. 1999) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  In other words, if supported by substantial evidence, the Commissioner's findings must be affirmed even if there is evidence favoring Plaintiff's side.  *Id.*; *see also Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988).  In determining whether the Commissioner's conclusion is supported by substantial evidence, courts "must examine the administrative record as a whole." *Cutlip*, 25 F.3d at 286.

### B.  The ALJ's Determination

To determine disability, an ALJ conducts a five-step analysis.  *Walters*, 127 F.3d at 529.  Under Step One, the ALJ considers whether the claimant is engaged in substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform.  *See id.* (citing 20 C.F.R. § 404.1520).  The burden of proof rests with the claimant for Steps One through Four.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)).  At Step Five, the burden of proof "shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity." *Id.* (citing *Bowen*, 482 U.S. at 146 n.5).

Here, at Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity after June 14, 2017—shortly after the alleged onset date of his disability. (Tr. 17).  At Step Two, the ALJ determined that Plaintiff has the following severe impairments: history of back disorders, knee disorders, and obesity.  (Tr. 18).  However,

3

the ALJ found that Plaintiff's following impairments were not severe: respiratory, cardiovascular, genitourinary, visual, left foot, gastrointestinal, and mental. (Tr. 18-19). As for Plaintiff's mental impairments, the ALJ found that they "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-'severe.'" (Tr. 19). Additionally, the ALJ found that Plaintiff has the following mild impairments: understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. (*Id.*). At Step Three, the ALJ determined that Plaintiff does not have any impairment or combination of impairments that meet or medically equal the severity of any of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 20).

The ALJ then found that Plaintiff possesses the residual functional capacity ("RFC") to perform "medium work" as outlined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), with the following limitations:

> The claimant can lift and carry 50 pounds occasionally and 25 pounds frequently; he can stand and walk for six hours in an eight-hour workday; he can sit for six hours in an eight-hour workday; he can occasionally climb ramps and stairs; he can never climb ladders, ropes, or scaffolds; he can frequently balance, stoop, kneel, crouch, and crawl; and he cannot tolerate even occasional exposure to heights or to machinery.

(Tr. 21). Ultimately, the ALJ concluded at Step Four that Plaintiff's RFC does not preclude Plaintiff from performing his past relevant work as a security guard. (Tr. 24).

Finally, at Step Five, the ALJ determined that numerous other jobs also exist in the national economy that Plaintiff can perform. (*Id.*). Based on the opinion of a vocational expert, the ALJ stated that Plaintiff could engage in medium unskilled occupations such as: a packer, an assembler, or a janitor. (Tr. 25). Accordingly, the ALJ concluded that

4

Plaintiff was not disabled as defined by the Social Security Act at any time after June 14, 2017. (Tr. 26).

### C. Analysis

In Plaintiff's Motion for Summary Judgment he makes two arguments: (1) the ALJ failed to consider Plaintiff's severe mental impairments and his status as an unskilled laborer and that Plaintiff should therefore be considered disabled even at the medium work level, and (2) the ALJ's disability decision was not supported by substantial evidence. (Doc. # 19-1 at 1-2). For the reasons stated below, both arguments fail.

#### *1.  The ALJ's Consideration of Plaintiff's Mental Impairments*

Plaintiff first argues that the ALJ did not consider Plaintiff's mental impairments as a severe limitation, or as a limitation at all, at Step Two. (*Id.* at 3). Plaintiff asserts that he has a limited education and the evaluation of Dr. Rigby, a consultant, "clearly indicate[s]" that Plaintiff could not perform his past work, medium work, or any work that would be classified as more than an unskilled job due to mental impairments. (*Id.* at 4). The Court disagrees.

Plaintiff does not provide support for this argument through a single citation to a case or statute, and instead, simply states that Plaintiff should be found disabled under Rule 203.01. (Doc. # 19-1 at 4). As pointed out by the Commissioner, Rule 203.01 does not apply to Plaintiff as it only applies to those "closely approaching retirement age." (Doc. # 21 at 13). "Closely approaching retirement age" refers to individuals age sixty or older. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 203.00(c). At the time of his disability filing, and at the time of the ALJ's decision, Plaintiff was fifty-three and fifty-five years old, respectively. (Tr. 83, 307).

The only other support for Plaintiff's argument is a bare recitation of his limited educational level and a one sentence reference to the evaluation of Dr. Rigby. (*Id.*). Step Two requires that the ALJ determine whether any of Plaintiff's impairments should be considered severe. *See* 20 C.F.R. § 404.1520(a)(4)(ii). In considering Dr. Rigby's evaluation, the ALJ properly assessed whether Plaintiff's mental impairments prevented him from working in his past occupation or another occupation at the medium work level. The ALJ used the four areas of mental functioning laid out in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, as a framework. (Tr. 19). The ALJ considered Dr. Rigby's evaluation in this discussion, but ultimately found that Dr. Rigby's conclusion that Plaintiff had moderate limitations in mental functioning was not supported by his own evaluation, which "adduced minimal objective findings." (Tr. 19-20). Instead of relying on the outcome of Dr. Rigby's evaluation, the ALJ relied on the opinion of the State psychological consultants, Dr. Cutler and Dr. Bornstein, who both determined Plaintiff had no severe mental impairments. (Tr. 20).

When assessing Plaintiff's relevant mental impairments, the five-step process explained above is utilized, along with a "special technique" reserved for mental impairments. 20 C.F.R. § 404.1520a(a). The first step requires "evaluat[ing] [claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [claimant has] a medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b)(1). If there is no medically determinable mental impairment, the inquiry ends there. A mental impairment "must be established by objective medical evidence from an acceptable medical source," and statements of symptoms by the claimant cannot be used "to establish the existence of an impairment(s)." 20 C.F.R. § 404.1521.

6

Further, when considering these types of medical opinions, the following factors are relevant: supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(c)(1)-(5). Directly relevant here are the two "most important factors": supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be," and consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § (c)(1)-(2).

In relation to Plaintiff's mental impairments, the ALJ discussed the findings of three medical experts, Dr. Rigby, a consultative examiner, and Dr. Bornstein and Dr. Cutler, State agency psychological consultants. (Tr. 19-20). Dr. Rigby opined that Plaintiff illustrated "intact concentration and attention," intact "short and long term memory," and "no indications of psychoses." (Tr. 510-511). Notably, Dr. Rigby also stated that Plaintiff's responses to "some of the mental status items appeared to be intentionally incorrect and this brings his reliability into question." (Tr. 510). However, without mentioning impairment in the body of the report, Dr. Rigby ultimately found that Plaintiff "has mild impairment to understand, retain, and follow simple instructions," "has moderate impairment to maintain social interactions with supervisors, friends, and the public," and "has moderate impairment to adapt and respond to the pressures of normal day-to-day work activity." (Tr. 514). By contrast, Dr. Bornstein concluded that Plaintiff has mild impairment in "[u]nderstand[ing], remember[ing], or apply[ing] information, [i]nteract[ing] with others, [c]oncentrat[ing], persist[ing], or maintain[ing] pace, [and] [a]dapt[ing] or

7

manag[ing] of oneself." (Tr. 110). Because the impairments did not prevent Plaintiff from working, Dr. Bornstein classified them as non-severe. (*Id.*). Dr. Bornstein further opined that Plaintiff had never been prescribed psychotropic medication for his impairments. (*Id.*). Dr. Cutler found that Dr. Bornstein's assessment was "highly persuasive, consistent with and fully supported by the overall medical evidence." (Tr. 125).

The ALJ's decision to rely on the State psychological consultants in evaluating Plaintiff's mental impairment was proper because the ALJ properly found Dr. Rigby's evaluation to be inconsistent with its ultimate conclusion. Under 20 C.F.R. § 404.1520c(c)(1), the "supportability" of a medical opinion is a function of the amount of objective evidence and number of explanations presented by the author to support his or her final opinion. In the ALJ's opinion, he pointed out that Dr. Rigby's assessment had "no basis either in his own evaluation of the claimant or in the remainder of the documentary record." (Tr. 20). Further, in properly applying the "consistency" factor in 20 C.F.R. § 404.1520c(c)(2), the ALJ decided to assign greater weight to the opinion of the two State agency psychologists, who both found mild impairments when discussing Plaintiff's mental abilities. (*Id.*). Because the ALJ's decision was consistent with guiding principles described in 20 C.F.R. § 404.1520c, the ALJ properly considered medical evidence when determining that Plaintiff did not have a severe mental impairment.

### 2. *Substantial Evidence*

Second, Plaintiff argues that the ALJ's disability determination was not supported by substantial evidence. (Doc. # 19-1 at 4). Plaintiff asserts that the ALJ did not consider the record in its entirety, or the combined effects of the Plaintiff's physical and mental impairments, when determining Plaintiff's ability to work or RFC. (*Id.* at 5). Plaintiff further

8

argues that the ALJ only included portions of relevant evidence that "cast the claimant in an unfavorable light" and failed to evaluate Plaintiff's complaints of pain. (*Id.*). Ultimately, Plaintiff's main contention is that due to his physical and mental impairments, "he could not perform a wide range of even sedentary work on a regular and sustained basis," and therefore should have been considered disabled. (*Id.*). However, for the reasons stated below, the Court finds that the ALJ's determination of Plaintiff's RFC and disability status was supported by substantial evidence.

Residual Functional Capacity ("RFC") refers to "the most [a claimant] can still do despite [his] limitations" and should be assessed "based on all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(1). A determination of a plaintiff's RFC begins with an assessment of a plaintiff's "impairment(s), and any related symptoms, such as pain, [which] may cause physical and mental limitations that affect what [claimant] can do in a work setting." *Id.* Further, "relevant . . . other evidence" may be assessed when determining RFC, including "descriptions and observations of [claimant's] limitations from [claimant's] impairment(s), including limitations that result from [claimant's] symptoms, such as pain" provided by the claimant. *Id.* § 404.1545(a)(3). Plaintiff argues that, in contravention of 20 C.F.R. § 404.1545(a)(3), the ALJ did not properly assess his complaints of pain and doubted Plaintiff's credibility without any evidentiary support. (Doc. # 19-1 at 5).

In evaluating complaints of pain, the ALJ should "consider all [claimant's] symptoms, including pain, and the extent to which [claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). But, "statements about [a claimant's] pain or other symptoms will

9

not alone establish that [a claimant is] disabled." *Id.* Next, if there is objective medical evidence supporting that a medical impairment "could reasonably be expected to produce the pain or other symptoms alleged," the ALJ should consider "other evidence (including statements about the intensity and persistence of [claimant's] pain," when determining if an individual is disabled. *Id.* However, "tolerance of pain is a highly individual matter and a determination of disability based on pain by necessity depends largely on the credibility of the claimant." *Houston v. Sec. of Health and Hum. Servs.*, 736 F.2d 365, 367 (6th Cir. 1984). But, the assessment of a claimant's credibility "must find support in the record," including "any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). Additionally, "[c]onsistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Id.* at 248.

In the ALJ's opinion, he characterized Plaintiff's description of his symptoms as follows:

> The claimant testified that he can stand for only 30 minutes at a time, walk not one block, and sit for only 25 minutes at a time. He stated that he can lift no more than one gallon of liquid. The claimant testified that he cannot perform bending or squatting or climb one flight of stairs. He asserted regarding the activities of daily living that he cannot comfortably wash dishes or perform cooking, mopping, sweeping, or vacuuming.

(Tr. 21). However, the ALJ found that:

> The record evidence demonstrates that the claimant experiences medically determinable impairments which can be expected to impose some of the symptoms he alleges. The undersigned finds, however, that the claimant's medically determinable impairments cannot reasonably be expected to

10

>impose symptoms of the intensity, persistence, and limiting effects as he alleges.

(*Id.*). The ALJ opined that Plaintiff's "subjective allegations and hearing testimony" were "greatly lacking in persuasiveness." (Tr. 22). In support of this finding, the ALJ points out: (1) that the claimant stopped working in 2012 due to a mine closure, a non-medical reason for terminating his status in the working population, (2) that the claimant previously made "intentionally incorrect" responses when being evaluated by Dr. Rigby, (3) the claimant presented a "non-physiological, hence unpersuasive inconsistent straight leg raising" exercise, (4) the claimant has not required specialized treatment for "debilitating" back pain, and (5) multiple inconsistencies in what the claimant testified to and what the medical reports show. (Tr. 22-23).

Plaintiff's argument is that the ALJ failed to evaluate Plaintiff's complaints about pain. (Doc. # 19-1 at 5). This is demonstrably untrue. The ALJ clearly evaluated Plaintiff's complaints of pain, but found them unpersuasive due to Plaintiff's lack of credibility. The ALJ's assessment of credibility was supported by the record, as the Plaintiff's statements were inconsistent with information contained in the medical record. *See Rogers*, 486 F.3d at 247-48. In explaining this conclusion, the ALJ evaluated the opinions of multiple medical experts and the record evidence underlying their opinions, (*id.*), including the Plaintiff's Global Assessment of Functioning (GAF), (Tr. 24). As discussed above, *supra* at p. 1, the ALJ's decision to rely on certain medical experts over others was supported by the factors discussed in 20 C.F.R. § 404.1520c.

Additionally, when discussing the Plaintiff's multiple ailments, outside the alleged mental impairments, the ALJ once again followed the guidance provided in § 404.1520c. For example, the ALJ considered the "supportability" factor in deciding that

11

many of the medical reports were consistent with the preponderance of the evidence. (Tr. 23-24); *see* 20 C.F.R. § 404.1520c(c)(1). The ALJ also considered the "consistency" factor by explaining that multiple medical experts ultimately reached the same conclusion that Plaintiff should not be considered disabled. (Tr. 23-24); *see* 20 C.F.R. § 404.1520c(c)(2). After taking into account the numerous expert opinions, and Plaintiff's often inconsistent statements regarding his symptoms, the ALJ made a credibility judgment that "[t]he documentary record entirely fails to substantiate this testimony" and that "the claimant's assertion that he is not able to perform basic work activities is not consistent with the evidence." (Tr. 23-24).

Therefore, the ALJ did not err when considering Plaintiff's credibility in making his ultimate decision on Plaintiff's ability to work, and his opinion was supported by substantial evidence in the record.

### III.  CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1) The decision of the Commissioner is supported by substantial evidence and is hereby **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment (Doc. # 19) is hereby **DENIED**;

(3) The Commissioner's Motion for Summary Judgment (Doc. # 21) is hereby **GRANTED**;

(4) This civil action is hereby **DISMISSED** and **STRICKEN** from the Court's active docket; and

(5) A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 28th day of January, 2021.



Signed By:
*David L. Bunning*  *DB*
United States District Judge